15.2201

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| THE NETHERLANDS INSURANCE COMPANY, a New Hampshire corporation, and INDIANA INSURANCE COMPANY, an corporation, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| — vs— | )<br>) |
| PHUSION PROJECTS INC., a Delaware corporation, and PHUSION PROJECTS, LLC, a Delaware limited liability company, | )<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT (28 USC 2201, *et seq*.)**

The plaintiffs, THE NETHERLANDS INSURANCE COMPANY, a New Hampshire corporation ("Netherlands"), and INDIANA INSURANCE COMPANY, an Indiana corporation ("Indiana"), by their attorneys, Joseph P. Postel, David S. Osborne, and Christopher J. Pickett of Lindsay, Rappaport & Postel, LLC, bring this action under the Declaratory Judgment Act (28 USC 2201, *et seq*.), against PHUSION PROJECTS INC., a Delaware corporation, and PHUSION PROJECTS, LLC, a Delaware limited liability company (hereinafter collectively referred to as "Phusion"), and allege as follows:

**Nature of the Action**

1. This is a declaratory judgment action wherein commercial general liability ("CGL") insurer Netherlands and commercial umbrella liability insurer Indiana seek a declaration that they do not owe a duty to defend or indemnify their named insured, Phusion, against three underlying complaints pending in Florida.

## Jurisdiction and Venue

2. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Netherlands and Phusion, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district, including:

   a. Phusion's principal place of business is in Chicago, Illinois;

   b. The insurance producer for this policy is located at 1700 E. Higgins Rd., Suite 320, Des Plaines, Illinois 60018;

   c. The underwriter for this policy is located in Lisle, Illinois;

   d. The insurance policies at issue in this case were delivered to Phusion in Chicago, Illinois.

   e. Illinois law therefore determines the rights and obligations of the parties to this case with respect to the insurance policies at issue.

## Parties

4. Netherlands is a New Hampshire corporation, and an indirect subsidiary of Liberty Mutual Insurance Company. Netherlands' principal place of business is in Keene, New Hampshire.

5. Indiana is an Indiana corporation, and an indirect subsidiary of Liberty Mutual Insurance Company. Indiana's principal place of business is in Indianapolis, Indiana.

6. Phusion Projects Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.

7. Phusion Projects LLC is a Delaware limited liability company with its

principal place of business in Chicago, Illinois. Despite considerable effort, plaintiffs have been unable to determine definitively who the "members" of Phusion Projects LLC are.[1] However, they have been able to determine, and therefore allege, that the "managers" of Phusion Projects LLC, as disclosed by the Illinois Secretary of State's web site, are Jaisen Freeman, Chris Hunter, and Jeff Wright. The Illinois Secretary of State's web site lists the same address for all of these "managers," which is 1658 Milwaukee Avenue, Suite 424, Chicago, Illinois. Plaintiffs do not believe that this address is a residential address for these "managers," but they do believe, and therefore allege, that the address is a business address for the "managers." Plaintiffs believe, and therefore allege, that the "managers" are Illinois citizens. Plaintiffs also believe, and therefore allege, that the "managers" are also the "members" of Phusion Projects LLC. Plaintiffs will engage in further efforts to confirm the identity of the "members," and request advance permission from this court to supplement or amend their complaint with any further information, in the event that either this court or any party challenges the citizenship allegations pertaining to the members of Phusion Projects LLC.

### Nonjoinder of Certain Parties

8. Joseph M. Keiran, as personal representative of the estate of Jason M. Keiran ("Keiran"), is the plaintiff in one of the underlying complaints and is a resident of

---

[1] In an effort to obtain this information, plaintiffs have viewed the following sources on the internet: (1) the web sites of the Illinois and Delaware Secretaries of State, (2) two lawsuits on Pacer in which Phusion Projects LLC was a party (one of which was filed by Phusion Projects LLC), (3) an affidavit of Phusion's President, Jaisen Freeman, submitted in one of those cases—case no. 1:09-cv-00624 in this court—in which affidavit Mr. Freeman attested that the headquarters and business records of Phusion Projects LLC are located in Chicago, and (4) over five pages worth of "hits" on Google, each page containing approximately 10 different web sites, most of which plaintiffs visited. These efforts did not yield the information. Plaintiffs also spoke with the Delaware Secretary of State, who told plaintiffs that a LLC is not required to disclose its members to the Secretary of State, and so it is therefore unlikely that the registration documents on file with the Secretary of State contain that information, but that in any event, it would require a written request and 7-10 days to receive the registration documents by mail.

Orange County, Florida. He has not been joined because this court does not have personal jurisdiction over him.

9. Briana McCarroll ("McCarroll") is the plaintiff in one of the underlying complaints and is a resident of Seminole County, Florida. She has not been joined because this court does not have personal jurisdiction over her.

10. Janice Rivera ("Rivera") is the plaintiff in one of the underlying complaints and is a resident of Volusia County, Florida. She has not been joined because this court does not have personal jurisdiction over her.

### The Underlying Complaints

The *Keiran* Complaint

11. On or about November 24, 2010, Keiran filed a first amended complaint in the Circuit Court of the 9th Judicial Circuit, Orange County, Florida, styled *Keiran v. Phusion Projects, LLC, et al.*, Case No. 10 CA 24651 (the "*Keiran* complaint"). A copy of the *Keiran* complaint is attached hereto as Exhibit A and is incorporated herein by reference.

12. With respect to Phusion and its product, "Four Loko," the *Keiran* complaint alleges as follows:

   a. Phusion "invented and owns the caffeinated, alcoholic beverage line known as 'Four Loko,' and is in the business of creating, formulating, marketing, labeling, distributing, and selling Four Loko."

   b. "[I]n 2005, Phusion introduced Four Loko to the national alcoholic beverage market. Its founders came up with the idea for Four Loko after noticing students were mixing alcoholic beverages and energy drinks in college bars."

   c. "Four Loko is sold domestically in a 23.5 ounce, single-serving, non-resealable can…roughly twice the size of a standard 12 ounce

    soda or beer can…[, it] contains carbonation, sugar, and natural and artificial flavors…[,] is sold in Florida at 12.0% alcohol by volume…[,] a can/serving also contains as much caffeine as two cups of coffee, or three to four cans of Coca-Cola, and the stimulants guarana, taurine, and wormwood, the active ingredient in absinthe…[,] and [c]onsumption of a single Four Loko can/serving will cause the average 225 pound man to achieve unlawful intoxication as defined by Florida's Uniform Traffic Control Laws."

d. The producers and sellers of such beverages "might be engaging in misleading marketing," because "these drinks may pose health risks by masking intoxication."

e. Phusion's "marketing and sales efforts target college-aged and underage consumers via the use of colorful, flashy labels which mimic those of popular non-alcoholic energy beverages, the use of flavors like watermelon, grape, blue raspberry, and fruit punch, and by pricing Four Loko at under $3.00 per can… [and that Four Loko] is sold mainly in convenience stores, where clerks are less likely to verify a customer's age, or even fail to recognize Four Loko as containing alcohol."

f. "Four Loko is a dangerous and defective product, both inherently, and in the manner in which it is marketed and sold."

g. The danger and defect consist of "reduce[d] subjective perceptions of alcohol-induced impairment as compared to alcohol alone" in persons who have consumed the product, rendering such persons "desensitized to the symptoms of intoxication, which increases the possibility for alcohol-related harm, such as alcohol poisoning, physical injury, impaired driving, and sexual victimization," as well as the fact that "being intoxicated—yet wide awake— increases the risk of engaging in violent or high-risk physical behaviors that can cause injury," and that due to its potency and disorienting effects, "Four Loko has acquired many nicknames, including 'liquid cocaine,' 'liquid crack,' and 'blackout-in-a-can.'"

h. On November 17, 2010, the FDA issued a "warning letter" to Phusion regarding Four Loko's safety, concluding that "significant safety concerns are raised by the co-consumption of caffeine and alcohol," and that Four Loko meets the statutory definition of an "adulterated" product, as contained in the Federal Food, Drug, and Cosmetic Act.

i. Phusion and the other "defendants were aware of the various risks

5

and dangers associated with Four Loko…[yet] ignored [them], and continued to formulate, market, brew, bottle, label, distribute, and sell Four Loko."

13. With respect to the damages claimed, the *Keiran* complaint alleges as follows:

   a. On the afternoon of September 16, 2010, and continuing into the morning of September 17, 2010, Jason Keiran ("Jason"), who at the time was 20 years old, purchased six cans of Four Loko at three different convenience stores in Tallahassee [Florida], consumed "several" of them, and by 9:00 a.m. on the 17th, "attempted to fall asleep, but could not."

   b. Jason and a friend then returned to his rental house and drank some more Four Loko.

   c. In the early afternoon, Jason, his friend, and one of his roommates, while in the back yard of the rental house, "began firing another roommate's handgun…into the ground and the sky…[and] [d]uring this time, Jason experimented and 'played with' the gun's safety, and removed and replaced the gun's ammunition clip several times."

   d. After re-entering the house, at approximately 1:30 p.m., Jason "accidentally discharged the gun while in his bedroom [and] suffered an accidental gunshot wound to his head." "Later that evening, he died."

14. The *Keiran* complaint asserts product liability claims against Phusion sounding in negligence and strict liability. It alleges that Phusion owed duties to the public and to Jason to formulate, market, brew, bottle, label, distribute, and sell Four Loko with reasonable care, to provide the beverage free from defects and dangers, and to warn consumers and Jason of Four Loko's dangers, but that Phusion breached these duties in that Phusion:

   a. "improperly formulated, marketed, brewed, bottled, labeled, distributed, and sold Four Loko, thus making it unreasonably safe {sic} and inherently dangerous for consumption by the intended, foreseeable consumer due to the combination of alcohol (a

        depressant) and caffeine, guarana, taurine and wormwood (stimulants)," and

    b. "improperly and insufficiently marketed, bottled, labeled, and distributed Four Loko so as to mislead and inadequately inform consumers as to Four Loko's contents, safety, and potency, attract underage consumers, and promote the over-consumption of Four Loko[,]" that "but for defendants' negligent acts and omissions, [Jason] would not have remained awake—yet intoxicated, disoriented, and agitated—into the afternoon hours of September 17, 2010, and would not have suffered a fatal, accidental gunshot wound," and that "defendants' negligence caused [Jason's] death."

15. The *Keiran* complaint also alleges that Phusion is guilty of intentional misconduct or gross negligence under § 768.72, Fla. Stat., and seeks damages as allowed under Florida's Wrongful Death Act, prejudgment interest, punitive damages, and costs.

### The *McCarroll* Complaint

16. On or about November 24, 2010, McCarroll filed a lawsuit in the Circuit Court of the 18th Judicial Circuit, Seminole County, Florida, styled as *McCarroll v. Phusion Projects, LLC, et al.*, Case No. 10-CA-7487-11-L (the *McCarroll* complaint). A copy of the *McCarroll* complaint is attached hereto as Exhibit B and is incorporated herein by reference.

17. With respect to Phusion and its product, 'Four Loko,' the *McCarroll* complaint alleges as follows:

    a. Phusion "is and was the formulator, manufacturer, distributor, marketer, and labeler of the alcoholic beverage known as 'Four Loko.'"

    b. Each 23.5 oz. can of Four Loko contains 12% alcohol by volume, 135 mg of caffeine, as well as guarana, taurine, and wormwood.

    c. Four Loko is "commonly known as 'Blackout in a Can.'"

    d. The can "is painted with bright, multicolored paint, and comes in flavors such as Grape, Fruit Punch, Orange Blend, Watermelon,

7

        Blue Raspberry, Lemon Lime, and Cranberry Lemonade."

    e. Phusion was, at the time the product in question was manufactured, "aware of how its product was used and referred to[,]" and "the fact that by virtue of its product, marketing, and social networking that underage drinkers were consuming its products and was well aware of the foreseeable misuse that would ensure {sic} if its products were used by underage drinkers."

    f. Phusion "intended young people, including underage drinkers, to purchase and consume its products and in fact created labeling, colors, flavors, formulations and marketing plans with the intent and/or knowledge that it would be consumed by underage drinkers."

18. With respect to McCarroll's damages, the *McCarroll* complaint alleges as follows:

    a. On the date of loss, Danielle Joseph ("Joseph") picked up McCarroll at McCarroll's home.

    b. Joseph purchased an unspecified quantity of Four Loko (in 23.5 oz. cans) from a Big Sammy's Store in Deltona, Florida.

    c. Joseph there and then "became agitated, careless, intoxicated and manic as a result of consuming one Four Loko alcoholic energy beverage[,] and purposefully increased the speed of the automobile she was driving to near 100 mph while desensitized to her intoxication and in a careless, agitated and manic condition[,] attempted to pass a truck trailer, instead striking the side of the trailer causing the car to flip numerous times, ejecting [McCarroll] from the car."

    d. On the date of loss, Joseph was not of legal drinking age in Florida.

    e. She consumed at least one can of Four Loko.

    f. She was "unaware that the beverage would desensitize her to the symptoms of intoxication, causing her to experience agitation, carelessness, and manic tendencies."

    g. McCarroll suffered permanent physical and mental injuries as a direct and proximate result of Phusion's "failure to warn, as well as the negligent formulation, manufacturing, distributing, marketing,

8

advertising and labeling."

19. The legal theories asserted against Phusion are as follows: Count I, "Negligent Formula," Count II, Negligent Manufacturing, Count III, Negligent Failure to Warn, Count IV, Negligent Marketing, Count V, Negligent Labeling, and Count VI, Strict Liability.

### The *Rivera* Complaint

20. On November 23, 2010, Rivera filed a lawsuit in the Circuit Court of the 7th Judicial Circuit, Volusia County, Florida, styled *Rivera v. Phusion Projects, Inc., et al.*, Case No. 2010-13580-CIDL (the "*Rivera* complaint"). A copy of the *Rivera* complaint is attached hereto as Exhibit C and is incorporated herein by reference.

21. The *Rivera* complaint involves the same automobile accident at issue in the *McCarroll* complaint. As such, it alleges the same core of operative facts, both in terms of the accident facts, and the allegations about Four Loko.

22. The *Rivera* complaint asserts the following theories against Phusion: Count IV, Strict Liability, Count V, Failure to Warn, Count VI, Design Defect, Count VII, Negligence, and Count VIII, Florida Deceptive and Unfair Trade Practices Act.

### **The Netherlands CGL Policy**

23. Netherlands issued policy no. CBP 8778317 to "Phusion Projects Inc and Phusion Projects LLC 1658 S Milwaukee Suite 424 Chicago IL 60647." A copy of the policy is attached hereto as Exhibit D and is incorporated herein by reference.

24. The policy has an effective period of May 6, 2010 to May 6, 2011 and included commercial property and CGL coverages. The CGL limits are $1,000,000 per occurrence.

25. The policy contains the ISO CG 000 01 10 01 coverage form with the following coverage grant:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

26. The CGL coverage form contains the following exclusion:

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

10

(**2**) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(**3**) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling serving or furnishing alcoholic beverages.

### The Indiana Commercial Umbrella Liability Policy

27. Indiana issued Commercial Umbrella Liability policy no. CU 8777618 to "Phusion Projects Inc and Phusion Projects LLC 1658 S Milwaukee Suite 424 Chicago IL 60647" ("the umbrella policy"). A copy of the umbrella policy is attached hereto as Exhibit E and is incorporated herein by reference.

28. The umbrella policy has an effective period of May 6, 2010 to May 6, 2011 with per occurrence and aggregate limits of $5,000,000.

29. The umbrella policy contains the following coverage grant:

**SECTION I – COVERAGE**

**1. Insuring Agreement**

a. We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. \*\*\*

30. The umbrella policy contains a nearly identical Liquor Liability exclusion:

**3. Exclusions**

This insurance does not apply to:

\* \* \*

**c. Liquor Liability**

11

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling serving or furnishing alcoholic beverages.

### Coverage Allegations

31. The Liquor Liability exclusion in the Netherlands CGL policy negates coverage for the *Keiran*, *McCarroll*, and *Rivera* complaints.

32. As such, Netherlands does not owe a duty to defend or indemnify Phusion under the CGL policy against any one of the three underlying complaints

33. The Liquor Liability exclusion in the Indiana umbrella policy negates coverage for the *Keiran*, *McCarroll*, and *Rivera* complaints.

34. As such, Indiana does not owe a duty to defend or indemnify Phusion under the umbrella policy against any one of the three underlying complaints

WHEREFORE, Netherlands and Indiana pray that this Honorable Court enter an order finding and declaring that neither Netherlands nor Indiana owe a duty to defend or indemnify Phusion with respect to the *Keiran*, *McCarroll*, and *Rivera* complaints.

| | |
|---|---|
| Joseph P. Postel  (#6189515)<br>David S. Osborne  (#6237821)<br>Christopher J. Pickett  (#6287096)<br>**Lindsay, Rappaport & Postel, LLC**<br>10 S. LaSalle Street, Suite 1301<br>Chicago IL 60603 (312-629-0208) | Respectfully submitted,<br>LINDSAY, RAPPAPORT & POSTEL, LLC<br><br>By:____/s/  Joseph P. Postel_____.<br>   Bar Number:  6189515<br>   Attorney for The Netherlands Ins. Co. |