IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NETHERLANDS INSURANCE CO. and INDIANA INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>PHUSION PROJECTS, INC. and PHUSION PROJECTS, LLC,<br><br>Defendants. | Case No. 11 C 1253 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Netherlands Insurance Co. and Indiana Insurance Company have sued Phusion Projects, Inc. and Phusion Projects, LLC (collectively Phusion). Plaintiffs seek a declaratory judgment that they have no duty to defend or indemnify Phusion in five lawsuits. Phusion has brought a counterclaim seeking a declaratory judgment that plaintiffs do have a duty to defend it. The Court has jurisdiction based on diversity of citizenship. Both plaintiffs and defendants have moved for summary judgment. For the reasons stated below, the Court grants each motion in part and denies each in part.

### Background

Phusion produces and sells Four Loko, an alcoholic beverage that contains large amounts of caffeine as well as other stimulants. In five state-court suits, individuals have sued Phusion claiming that they suffered injuries after drinking Four Loko themselves or were injured by someone else who had drunk Four Loko. The suits

allege that Four Loko is dangerous because it combines high amounts of alcohol with high amounts of stimulants. The state-court plaintiffs allege that the combination of alcohol and stimulants allows drinkers to consume more alcohol without passing out, causes drinkers to behave more erratically when intoxicated, and leads to other negative health effects.

Netherlands and Indiana insure Phusion. Netherlands issued Phusion a commercial general liability (CGL) insurance policy and Indiana issued an umbrella insurance policy. Both insurance policies provide coverage for bodily injury and property damage caused by Phusion's products. The policies had exclusions that stated:

> This insurance does not apply to:
> . . .
> c.  Liquor Liability
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
> (1) Causing or contributing to the intoxication of any person;
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Compl., Ex. F-3 at 8 & Ex. G at 5–6.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties do not dispute that Illinois law applies to this case. In Illinois, when "the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 455, 930 N.E.2d 1011, 1016–17 (2010). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Id.* Plaintiffs argue that they have no duty to defend Phusion in the lawsuits because the liquor liability exclusion unambiguously includes all claims in the underlying suits. Phusion argues in response that plaintiffs have a duty to defend because the liquor liability exclusion does not apply or, in the alternative, there are claims in each suit which are outside the exclusion.

**A.     Interpretation of the exclusion**

Under Illinois law,

> [b]ecause an insurance policy is a contract, the rules applicable to contract interpretation govern the interpretation of an insurance policy. [The court's] primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language. If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy. The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage only applies where the provision is ambiguous. A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. Rather, an ambiguity will be found where the policy language is susceptible to more than one reasonable interpretation.

*Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 43, 930 N.E.2d 999, 1003–04 (2010) (citations omitted). "Although 'creative possibilities" may be suggested, only reasonable

3

interpretations will be considered. Thus, [courts] will not strain to find an ambiguity where none exists." *Hobbs v. Hartford Ins. Co.*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005).

Plaintiffs contend that the liquor liability exclusion in the policies is unambiguous. They note that the policies do not cover personal injury suits that result from "causing or contributing to the intoxication of any person." Compl., Ex. F-3 at 8 & Ex. G at 6. Plaintiffs are correct that the insurance policies are unambiguous. The plain language of exclusion is only susceptible to one reasonable interpretation: all suits based on allegations that Phusion's products caused someone to become intoxicated, leading to personal injury, are excluded under both policies.

Phusion offers two arguments in response. First, it states that it purchased insurance policies that provided insurance for injuries caused by its products. Compl., Ex. F-3 at 16–17, 22–23, Ex. G at 1, 15, 23, 25. In fact, it appears that in the CGL policy Phusion bought from Netherlands, Phusion paid an additional premium to have a separate policy limit for the insurance covering its products. *Id.*, Ex. F-2 at 45–46. Phusion argues that plaintiffs knew that Phusion's only products were alcoholic beverages and that for this reason, Phusion effectively receives no insurance coverage on its products if the liquor liability exclusion applies. Therefore, Phusion contends, the liquor liability exclusion must not apply to Phusion or its products.

The Court disagrees with the premise of Phusion's argument. Even with the liquor liability exclusion, the insurance policies cover Phusion for any suit related to its products where the injury was not caused by a person becoming intoxicated from Phusion's drinks. For example, if a can of Four Loko exploded on a store shelf and

injured customers, the liquor liability exclusion would not apply. Similarly, if Phusion sold tainted products and injured its customers in a manner unrelated to intoxication, the exclusion would not apply. *See B.L.G. Enters. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330–31 (S.C. 1999) (policy excluded injury caused "by selling, serving or giving of any alcoholic beverage," but still provided coverage for accidents at insured's place of business or if it sold contaminated food or non-alcoholic beverages).

In addition, the language of the liquor liability provision is clear and unambiguous. It states that the insurance policy does not cover any claim related to causing intoxication. The fact that Phusion's only products are alcoholic beverages does not make the language of the exclusion ambiguous.

Phusion's second argument is that the liquor exclusion is commonly used to exclude lawsuits faced by businesses, such as bars, that sell directly to customers. Phusion argues that the liquor liability exclusion only applies to suits under "Dram Shop" laws, which impose liability on those who sell alcohol directly to individuals who become intoxicated and cause injuries. *See* 235 ILCS 5/6-21. Phusion also notes that courts sometimes refer to the liquor liability exclusion as a "dram shop exclusion." *E.g.*, *Monticello Ins. Co. v. Mike's Speedway Lounge*, 949 F. Supp. 694, 696–97 (S.D. Ind. 1996). Accordingly, Phusion contends, suits arising from its manufacture and distribution of alcoholic beverages are not covered by the exclusion.

Phusion's argument is countered by the insurance policies themselves. They specifically state that the exclusion applies only if the insured is "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." Compl., Ex. F-3 at 8 & Ex. G at 6. As a manufacturer of Four Loko and other alcoholic

5

beverages, Phusion is clearly covered by the policy. If the policy was intended to apply only to bars and restaurants, it would not state unequivocally that it applied to manufacturers and distributers. Phusion argues that the exclusion might cover only dram shop suits and still apply to a manufacturer or distributor, if it was promoting its drinks directly to customers at a bar or restaurant. But the language of the exclusion does not make this distinction, and Phusion has not provided anything to support its contention.

Phusion states that plaintiffs have not cited any case in which the liquor liability exclusion is applied to a manufacturer who, like Phusion, did not directly serve consumers. But Phusion itself has not cited any legal authority for its contention that the exclusion is intended to cover only dram shop-type claims.

Both Phusion and plaintiffs offer evidence regarding whether persons in the insurance industry understand that the liquor liability exclusion covers more than dram shop-type suits and whether the additional liquor liability insurance purchased by bars and restaurants would cover the suits against Phusion in this case. This evidence is irrelevant, however, because the language of the insurance policy itself is unambiguous. *Traveler's Ins. Co. v. Eljer Mfg.*, 197 Ill. 2d 278, 301, 757 N.E.2d 481, 496 (2001) (when policy is unambiguous, courts do not consider extrinsic evidence and use only the "plain, ordinary and popular meaning" of policy terms).

The language of the liquor liability exclusion is unambiguous. It clearly provides that plaintiffs have no duty to defend any case arising from Phusion causing a person to become intoxicated. Compl., Ex. F-3 at 8 & Ex. G at 5–6.

B.     **Application of exclusion to the underlying lawsuits**

To determine if plaintiffs have a duty to defend, the Court must examine the allegations in the five underlying complaints and determine whether the lawsuits are based upon Phusion causing or contributing to a person's intoxication. *Pekin Ins. Co.*, 237 Ill. 2d at 455, 930 N.E.2d at 1016–17. "If several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155, 828 N.E.2d 1092, 1098 (2005).

Any claim made in the underlying lawsuits that are not "wholly independent" of intoxication, however, fall within the liquor liability exclusion. *State Farm Fire & Cas. Co. v. Perez*, 387 Ill. App. 3d 549, 556–57, 899 N.E.2d 1231, 1238 (2008) (insurance policy excluded injuries arising from use of car; court determined that claims related to negligently modified seats and seat belts were excluded because the injury arose from use of car); *see Certain Underwriters at Lloyd's of London v. Kutchens Enters., Inc.*, No. 4:08-CV-143-A, 2008 WL 5381244, at *5 (N.D. Tex. Dec. 22, 2008) (negligent supervision and failure to monitor claims were excluded by liquor liability exclusion because factually the injuries suffered by plaintiff arose out of serving alcoholic beverages). A claim based on a "rephrasing" of the fact that injuries arose from intoxication will not avoid the exclusion. *State Farm*, 387 Ill. App. 3d at 556–57, 899 N.E.2d at 1238; *see Maxum Indem. Co. v. Gillette*, 405 Ill. App. 3d 881, 887, 940 N.E.2d 78, 83–84 (2010) (claims related to negligent construction of parade float and failure to warn were excluded by automobile exclusion in policy when plaintiff in underlying suit

fell off of float while it was in motion). The plaintiff in the underlying suit must do more than offer an alternative theory of relief; to avoid the liquor liability exclusion, the complaint must allege an injury that is unconnected with the excluded injury. *See Nautilus Ins. Co. v. 1452–4 N. Milwaukee Ave., L.L.C.*, 562 F.3d 818, 821–23 (7th Cir. 2009) (claim that insured failed to provide statutory notice was excluded by subcontractor exclusion in insurance policy, because it was based on the same injury as claims alleging that insured negligently hired and supervised subcontractor); *S.C. Ins. Co. v. Keymon*, 974 So. 2d 226, 231 (Miss. 2008) (liquor liability exclusion covered plaintiff's claims because all injuries alleged arose from sale of beer to tortfeasor, regardless of whether claims were phrased as negligence or intentional torts).

### 1. Keiran suit

The *Keiran* lawsuit is based on the allegation that Jason Keiran accidentally shot and killed himself after consuming a number of cans of Four Loko and remaining awake for more than thirty hours. Def. Ex. A-1 at 13–15. The lawsuit includes two products liability claims against Phusion, alleging that the company was both negligent and that it is strictly liable for the alleged defects in its product. *Id.* at 15, 23. The plaintiff alleges that Four Loko was dangerously formulated because of its combination of large quantities of alcohol and stimulants and that Phusion did not adequately warn consumers about the danger posed by consumption of its product. *Id.*

Phusion argues that at least some of these claims are not covered by the liquor liability exclusion because they relate to the amounts of caffeine, taurine, and wormwood in Four Loko and because the claims are based on unspecified additional defects. It is clear from the complaint, however, that the plaintiff alleges that Keiran's

8

injury was caused by his intoxication. The complaint includes as allegations that Keiran consumed enough alcohol to lose consciousness and that he was disoriented and agitated at the time of his death. *Id.* at 14–15. Regardless of the specific duties Phusion is claimed to have breached, it does not allege any injury that is wholly independent of intoxication. *See Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 195 Ill. 2d 96, 98–99, 741 N.E.2d 253, 254–55 (2000) (claims by plaintiffs injured in a school bus accident were excluded by automobile exclusion, even though they alleged that school district inadequately planned bus routes and failed to warn bus drivers). The insurance companies have no duty to defend Phusion in this case, because the claims are covered by the liquor liability exclusion.

### 2. McCarroll suit

Briana McCarroll alleges that she was injured in an accident caused by Danielle Joseph's reckless driving after Joseph consumed several cans of Four Loko. Def. Ex. A-2 at 6–8. McCarroll brings negligence and strict liability claims against Phusion, claiming that the combination of ingredients in Four Loko was particularly dangerous, Phusion failed to warn the public of danger, and it marketed Four Loko to underage customers. *Id.* at 12–14, 18–20.

Phusion argues that the insurance companies have a duty to defend Phusion in the case because McCarroll's claims are based in part on the caffeine content of Four Loko and other unspecified defects. As with the *Keiran* lawsuit, however, McCarroll's claimed injuries all are alleged to have been caused by the intoxication of the driver of the car in which she was a passenger. McCarroll alleges that Joseph was "impaired" and that she was "agitated, aggressive, careless, and manic as a result of consuming

the 'Four Loko' beverages." *Id.* at 7. As a result, McCarroll alleges, Joseph drove too fast and caused an accident. McCarroll does not allege any injuries that were not caused by Joseph's intoxication, and thus the insurance companies have no duty to defend Phusion against her lawsuit.

### 3. Rivera suit

Janice Rivera alleges that she was, like McCarroll, a passenger in the car of Danielle Joseph, and that Joseph caused an accident after drinking Four Loko. Def. Ex. A-3 at 2–4. Rivera brings strict liability, failure to warn, design defect, negligence, and deceptive trade practices claims against Phusion. *Id.* at 13–21. She alleges that Four Loko was dangerous because it combined large amounts alcohol and stimulants; Phusion did not warn consumers of this danger; the danger meant Four Loko was defectively designed; and Phusion marketed Four Loko to underage customers. *Id.* at 13–17, 20–21.

Rivera claims only injuries arising from the car accident, which she alleges occurred "[a]s a direct and proximate result of [Joseph] being sold alcoholic beverages . . . and becoming intoxicated." *Id.* at 3. Rivera alleges no injuries that were not caused by Joseph's intoxication. The lawsuit is therefore excluded under the insurance policies.

### 4. Mustica suit

Michael Mustica claims that after drinking two and a half cans of Four Loko one night, he woke up the next day and "felt his heart racing and had trouble breathing." *Id.* at 48. He alleges that he developed a heart condition as a consequence of drinking Four Loko and that since that time he has required the care of a cardiologist. *Id.* Mustica brings failure to warn, manufacturing defect, and design defect claims against

10

Phusion, as well as a respondeat superior claim related to the actions of unnamed Phusion employees. *Id.* at 49, 51, 53, 57. Mustica claims that the combination of stimulants with alcohol makes Four Loko "uniquely dangerous" and that Phusion failed to warn him of the danger. *Id.* at 51.

Unlike the other lawsuits, Mustica does not allege an injury caused by intoxication. His claim is that he consumed a dangerous beverage and as a consequence suffered serious health effects. The complaint makes passing references to the stimulants in Four Loko allowing consumers to drink more without feeling intoxicated, but he does not claim that he was intoxicated by the Four Loko that he drank. *Id.* at 48, 51. Specifically, Mustica claims that his consumption of Four Loko led to a heart condition because the product was dangerous, completely aside from its potential to cause intoxication. *See United Servs. Auto. Ass'n v. Dare*, 357 Ill. App. 3d 955, 965–67, 830 N.E.2d 670, 679–80 (2005) (insurance policy that excluded injuries caused by use or maintenance of trailer did not apply to claims related to defective design and manufacture and failure to warn of chain installed on back of trailer because the product was unrelated to maintenance of trailer). The other lawsuits, by contrast, all involve accidents caused by intoxication after someone drank Four Loko. Because Mustica does not allege an injury arising from intoxication, the insurance policies have a duty to defend Phusion against his claims. *See Gen. Agents Ins. Co. of Am.*, 215 Ill. 2d at 155, 828 N.E.2d at 1098 ("If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent.").

### 5. Rupp suit

The *Rupp* lawsuit is based on the allegation that John Rupp fell on a busy highway after consuming two cans of Four Loko and was struck and killed by a car. Def. Ex. A-3 at 63–64. The plaintiffs in the Rupp suit allege that Four Loko is a dangerous and defective product and that Phusion was negligent in developing, labeling, and marketing Four Loko. *Id.* at 64, 67. They claim that the combination of stimulants with alcohol masks intoxication and that Phusion marketed its product to underage consumers. *Id.* at 64.

As with the *Keiran*, *McCarroll*, and *Rivera* suits, Rupp's alleged injury is based on intoxication. The complaint alleges that Rupp was paranoid and disoriented; his communications with his mother on the night of the accident were nonsensical; and he decided to leave his shoes, wallet, and cell phone by a pond before walking on a busy highway. *Id.* at 63–64. Phusion contends that the *Rupp* suit lists a large number of design defects. It is clear, however, that the only injury alleged arises from Rupp's intoxication. The insurance companies thus have no duty to defend.

### 6. Conclusion

Based on the claims stated by the complaints in the underlying lawsuits, the plaintiffs have no duty to defend Phusion in the *Keiran*, *McCarroll*, *Rivera*, and *Rupp* suits. The Court grants summary judgment in favor of plaintiffs insofar as they seek a declaration that they have no duty to defend those lawsuits. Plaintiffs do, however, have a duty to defend Phusion in the *Mustica* lawsuit. The Court therefore grants summary judgment in favor of Phusion on its claim of a duty to defend regarding that lawsuit. The Court does not determine whether plaintiffs have a duty to indemnify

Phusion in that case, because the question of whether an insurer has a duty to indemnify "is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *United Servs. Auto. Ass'n*, 357 Ill. App. 3d at 960, 830 N.E.2d at 675.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part plaintiffs' motion for summary judgment [docket no. 26] and grants in part and denies in part defendants' motion for summary judgment [docket no. 39]. The case is set for a status hearing on January 25, 2012 at 8:30 a.m. to address what, if any, further proceedings will be required.

```
                                        _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge
```

Date: January 17, 2012